**In re Grand Jury Proceedings of Robert W. BEVERLY et al., Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 72-2752.

United States Court of Appeals, Fifth Circuit.

Sept. 25, 1972.

---

Cameron Cunningham, Austin, Tex., Benjamin E. Smith, New Orleans, La., Jack Levine, Philadelphia, Pa., Nancy Stearns, Doris Peterson, James Reif, c/o Center for Constitutional Rights, New York City, Judith Petersen, Johnson & Ellis, Gainesville, Fla., Edward Carl Broege, Newark, N. J., for appellants.

William M. Piatt, Robert L. Keuch, Thaddeus B. Hodgdon, Attys., U. S. Dept. of Justice, Washington, D. C., Stewart J. Carrouth, Guy Goodwin and Stark King, U. S. Dept. of Justice, Tallahassee, Fla., William H. Stafford Jr., U. S. Atty., Pensacola, Fla., A. William Olson, Asst. Atty. Gen., Washington, D. C., for appellee.

Before GODBOLD,* SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

We review the commitment under Section 1826, Title 28, U.S.C.,[1] of the four appellants for civil contempt for refusal to answer questions before a federal grand jury. The commitment of each was for confinement for the life of the grand jury (about 12 months) or until he testified in response to the questions propounded. We find that one of the several contentions advanced by appellants is meritorious and accordingly vacate the contempt order.

The appellants, and others, members of the Vietnam Veterans Against the War (VVAW), were subpoenaed on July 7, 1972, to appear and testify on Monday, July 10, before a grand jury of the Northern District of Florida in Tallahassee, Florida. The grand jury was investigating alleged plans of the VVAW to disrupt the Republican National Convention in Miami, Florida, to be held the week of August 21, in violation of various criminal statutes. The appellants appeared before the grand jury the week of July 10, but refused to answer any questions.[2]

On July 13, the United States sought to compel the appellants' testimony before the grand jury by seeking a grant of use immunity under Title 18, U.S.C.,

---

\* Judge Godbold took no part in the decision of this case.

1. Title 28, U.S.C., Sec. 1826, provides:
 "(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
 (1) the court proceeding, or
 (2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.
 (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal."

2. The appellants were each questioned as follows:
 "Q. I will at this time ask you to describe for the grand jury every occasion during the month of May, 1972, when you traveled to the City of Gainesville, Florida, and attended meetings at which plans for demonstrations at political conventions were discussed telling the grand jury when these occasions were, who was present and what was said and done on each occasion.
 Q. Describe for the grand jury every occasion during the month of May, the months of May and June, 1972, when you were present when destructive devices of any kind of explosives were demonstrated by any individuals, telling the grand jury when these demonstrations occurred, who was present and precisely what the devices were that were demonstrated on each occasion."
 Each *initially refused to answer on Fifth Amendment grounds.*

Sections 6002, 6003,[3] from the court below. In response, the appellants alleged by motions, supported by affidavits asserting information and belief, that they had been subjected to illegal electronic surveillance, and moved under Title 18, U.S.C., Section 3504,[4] for affirmance or denial of this allegation by the government.

After a hearing, the district court granted use immunity to the appellants. The appellants each subsequently appeared before the grand jury, but again refused to testify,[5] whereupon the United States sought to have the appellants held in civil contempt by the presiding district judge. At this juncture, on July 13, the government filed similar affida-

---

3. Title 18, U.S.C., Sections 6002, 6003, provides:
 "§ 6002. Immunity generally
 Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
 (1) a court or grand jury of the United States,
 (2) an agency of the United States, or
 (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
 and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.
 "§ 6003. Court and grand jury proceedings
 (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.
 (b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request

an order under subsection (a) of this section when in his judgment— .
 (1) the testimony or other information from such individual may be necessary to the public interest; and
 (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

4. Title 18, U.S.C., Section 3504, provides:
 "(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—
 (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act;
 (2) disclosure of information for a determination if evidence is inadmissible because it is the primary product of an unlawful act occurring prior to June 19, 1968, or because it was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, shall not be required unless such information may be relevant to a pending claim of such inadmissibility; and
 (3) no claim shall be considered that evidence of an event is inadmissible on the ground that such evidence was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, if such event occurred more than five years after such allegedly unlawful act.
 (b) As used in this section 'unlawful act' means any act the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto."

5. The appellants each refused to answer the same questions that had previously been asked them. See Footnote 1, supra.

vits as to each witness denying any electronic surveillance of each of them.[6] The court, after a show cause hearing, and after eliciting a continuing refusal to answer from each witness, but without making findings of fact and conclusions of law, held the appellants in civil contempt pursuant to Title 28, U.S.C., Section 1826,[7] and ordered them incarcerated for the life of the grand jury[8] or until such time as they should by answering the questions purge themselves of contempt. The same day, July 13, the grand jury returned an indictment[9] against six other members of the VVAW, since dubbed by the news media as "The Gainesville Six".

A panel of this Court on July 18 vacated the lower court's adjudication of civil contempt, and remanded for further hearing below and entry of findings of fact and conclusions of law.[10]

---

6. These four affidavits, identical except for the name of the subject, and sworn to on July 13, 1972, stated that:

"GUY L. GOODWIN, being first duly sworn, states:

1. That I am an attorney with the United States Department of Justice, Internal Security Division, temporarily assigned to assist the United States Attorney for the Northern District of Florida, and I am authorized to represent the Government in grand jury investigations and judicial proceedings ancillary thereto;

2. That he caused an inquiry to be made with the appropriate Federal Government agencies to determine if there has been any electronic surveillance of the conversations of John Victor Chambers or any electronic surveillance of conversations occurring on premises which were known to have been owned, leased or licensed by him, whether or not he was present or participated in those conversations;

3. That based on the results of such inquiry he hereby states that there has been no electronic surveillance of any conversations of John Victor Chambers and that there has been no electronic surveillance of any conversations occurring on premises which were known to have been owned, leased or licensed by him.

/s/ Guy L. Goodwin
Special Attorney."

7. Quoted in Footnote 1, supra.

8. Empanelled in January, 1972, and having life expectancy tenure to July, 1973, as a maximum. Rule 6(g), F.R.Crim.P.

9. The indictment charged violations of Title 18, U.S.C., § 231(a)(1) (civil disorders which may obstruct, delay and adversely affect commerce); Title 26, U.S.C., §§ 5861(d) and 5871 (unlawful possession of an unregistered destructive device); conspiracy to violate Title 18, U.S.C., § 2101 (interstate travel or communication to perpetrate a riot); Title 18, U.S.C., § 844(i) (malicious damage and destruction, by means of explosives, of personal and real property used in interstate commerce); Title 18, U.S.C., § 844(h) (use of explosives to commit felonies prosecutable in courts of the United States), and Title 26, U.S.C., § 5861(c) and (d); and Title 18, U.S.C., § 371 (conspiracy).

*Inter alia*, the indictment alleged that:

"It was the part of the said conspiracy that the defendants and the individual co-conspirators would organize numerous 'fire teams' to attack with automatic weapons, fire and incendiary devices police stations, police cars, and stores in Miami Beach, Florida, on various dates between August 21 and 24, 1972; that the defendants and the individual co-conspirators would fire lead weights, 'fried' marbles, ball bearings, 'cherry' bombs, and smoke bombs at police in Miami Beach, Florida, on various dates between August 21 and 24, 1972, by means of wrist rocket sling-shots and cross-bows; that the defendants and the individual co-conspirators would disrupt communications systems in Miami Beach, Florida, on various dates between August 21 and 24, 1972." ·

Two of these appellants, Beverly and Chambers, were named in the indictment as co-conspirators, but not indicted. Horton and Jennings were not mentioned in the indictment.

10. Omitting the caption this order by Chief Judge Brown and Judges Goldberg and Morgan provided:

"BY THE COURT:

This is a motion for stay and application for bail pending appeal following the civil contempt commitment of the petitioning four witnesses who declined to answer questions propounded by a Federal Grand Jury in Tallahassee, Florida. The moving papers present a serious and substantial challenge to the procedures utilized at the commitment hearing, including an asserted denial of

At the ordered hearing held on July 25, the appellants again asserted illegal electronic surveillance by the government. On August 3 the appellants filed motions, supported by affidavit, asserting that one of their counsel might have been subjected to illegal electronic surveillance.

This affidavit was that of James Reif which the district court undertook to analyze by its separate August 7 order (Footnote 11, infra), and which we discuss in some detail, infra. At that time there was also on file among the earlier affidavits, but not again specifically called to the court's attention by the motion regarding electronic surveillance of counsel, an affidavit of another counsel for one or more of the appellants, Nancy Stearns. The Stearns affidavit although setting forth reasons—inability to get a dial tone, hearing clicks, noises and voices on the telephone, et cetera— to believe that there might be electronic surveillance of the "VVAW house" (actually the residence of one Hall, a VVAW member) or of the residence where Stearns and other attorneys were staying in Tallahassee, did not intimate suspected surveillance of her conversations as being appellant's *counsel's* communications. In other words, the Stearns affidavit on its face simply supported the claim that one or more of the grand jury witnesses were being sub-jected to electronic surveillance. Without detailing the contents of the July 13 affidavits of the four appellants and others, it suffices for the present to note that they all recounted happenings giving rise to a belief that their telephone messages were being electronically intercepted. Also presented was the affidavit of Michael McCain, a national co-ordinator for the VVAW, who described personal, civilian and military experience qualifying him as an expert in electronics and communications systems, and interpreted by means of this knowledge and expertise the noises and other disturbances heard by the other affiants as indicating use of electronic bugging equipment attached to some or all of the listed telephones.

The affiant James Reif was also of counsel in the consolidated cases of In re Tierney and Reilly, et al. v. United States, 5 Cir. 1972, 465 F.2d 806. His affidavit was based on a statement of the government's brief on appeal in *Tierney* that "subsequent to the disclaimers made by the government in response to the order of the district court, information was received that one of the attorneys now before this Court had been, on one occasion, overheard on a surveillance being conducted pursuant to court order". This statement was discussed in *Tierney* at page 812–813 of the opinion. The Reif affidavit proceeded on

an opportunity to show cause, and alleged failure to provide notice of the questions which the witnesses were charged with refusing to answer, and the government's alleged non-compliance with a provision of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2515. See Gelbard v. United States, 1972, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179.

Unfortunately, as the result of a combination of circumstances beyond anyone's control, we are unable at this time to make an informed ruling on these matters in the absence of even a skeleton record of the proceedings in the District Court, a part of the problem having arisen from the absence of the court reporter on presumably authorized leave. Accordingly, IT IS ORDERED that the District Court convene a hearing as ex-peditiously as will permit the attendance of counsel for the purpose of hearing and resolving the factual issues raised by the witnesses in connection with the commitment proceedings, followed by the entry of an order containing such findings of fact and conclusion of law as will provide this Court with an adequate basis for appellate review. If an appeal is taken the preparation of the record shall be expedited by the District Court.

IT IS FURTHER ORDERED that the petitioning witnesses be enlarged pending the disposition of these proceedings in the District Court, following which they shall be subject to such further orders, including recommitment, as the District Court may deem appropriate at that time."

the postulate that of the four counsel of record in *Tierney* and *Reilly,* two of them (the affiant Reif and Ms. Peterson) were among the four counsel for these appellants and that there was thus a 50% chance that the attorney who was overheard in *Tierney* and *Reilly* was also counsel for these appellants. The affidavit urged that it might also turn out that one or more other attorneys in the case at bar were overheard by governmental electronic surveillance. It was this line of reasoning which the trial court denominated as "imprecise speculation", requiring no response.

The Reif affidavit included additional pertinent observations which we set forth below:

"7. Electronic surveillance of an attorney raises the most basic constitutional questions. We need cite only one. If the government admits surveillance of any attorney in this case but refuses to disclose the records of that surveillance in order to enable respondents to determine whether or not their Sixth Amendment rights have been violated, there will then be squarely posed to this Court the very constitutional question which lead (sic) Supreme Court Justice William O. Douglas, on July 29, 1972, to stay commencement of one of the most important trials of our time, the 'Pentagon Papers' case, United States v. Byrne, 409 U.S. 1219, 93 S.Ct. 21, 33 L.Ed.2d 30 (C.D.Cal.). (A copy of Mr. Justice Douglas' opinion, as dictated over the telephone, is annexed hereto.)

"8. In light of the facts which have recently been made known by the government, the appropriate procedure is to call upon the government to affirm or unequivocally deny surveillance of each of the attorneys who have appeared in these proceedings, and to then have a hearing on the issues arising from the government's response.

"9. It should be noted that, apart from this motion and as the government *concedes* in its *Tierney-Reilly* brief at p. 25, the government is under an *affirmative* obligation to provide an individual with all records of any overhearing which may violate that person's Sixth Amendment right to effective counsel, whether or not that surveillance also violates the Fourth Amendment and 18 U.S.C. § 2510–20."

The government did not respond by denial or affirmance to the claim of attorney surveillance, the court holding that the motion did not make sufficient showing to warrant requirement of a response.[11]

11. By a separate order of denial dated August 7 providing in pertinent part:
"The basis for this pending motion was prompted by the statement of the government in other unrelated proceedings involving some of the attorneys of record in this cause that there had been an overhear of one of the attorneys representing appellants in those proceedings. See In Re Tierney, 465 F.2d 806, 5th Cir. 1972; In Re Morahan et al., 465 F.2d 806, 5th Cir. 1972.
"The supporting affidavit submitted by counsel in this matter is barren of allegations showing that counsel in these proceedings were the focus of and subjected to any electronic surveillance or unlawful overhearing in regard to the proceedings pending in this Court. Assuming, *arguendo,* that movants possess the requisite standing and that there was an overhear of conversations of counsel, there is no averment that those communications were the subject of inquiry of proceedings in this Court and that there was interference with the right to counsel or the adequacy of representation rendered by counsel to their clients. This kind of imprecise speculation standing alone would not support the position of movants and entitle them to compel the government to affirm or deny the occurrence of any electronic surveillance or alternatively to compel disclosure by the government of records of electronic surveillance in these proceedings. In sum, the allegations of the supporting affidavit are not sufficient to bring the provisions of Title 18, United States Code, Section 3504 into play. c. f. United States v. Reynolds, 449 F.2d 1347 (9th Cir. 1971)."

On August 7 the district court again held the appellants in civil contempt and entered similar findings of fact and conclusions of law respecting each appellant.[12] The appellants moved the trial court on August 9 for a stay or bail pending appeal. That court denied the motion, holding that the appeal was frivolous and brought for the purpose of delay in terms of Title 28, U.S.C., Section 1826(b). See Footnote 1, supra. The appellants were incarcerated the same day, with this appeal being entered August 11.

 The appellants moved this Court on August 15 for stay or bail pending appeal. After an emergency hearing of this application in New Orleans on Friday, August 18, we denied the application.[13] Because of the severe 30-

---

12. The district court's identical findings of fact and conclusions of law regarding each of the appellants may be summarized as including the following:

1. The grand jury was lawfully empanelled and sitting at Tallahassee, Florida, and was lawfully inquiring into violations of federal criminal statutes.

2. Special attorneys of the United States Department of Justice, Guy L. Goodwin and Stark H. King, were duly authorized by the Attorney General of the United States to appear and assist the grand jury at Tallahassee, Florida, in the inquiry being conducted by that grand jury.

3. The witness was lawfully subpoenaed before the grand jury on July 10, 1972, and had ample and legally sufficient time to obtain and consult with counsel prior to appearing before the grand jury on July 12, 1972.

4. The witness was represented by competent and able counsel at all stages of proceedings before the Court and grand jury.

5. The witness was afforded ample opportunity to consult fully with counsel after each question asked by the grand jury.

6. The sworn application of the United States Attorney for a grant of immunity and the authorization of the Attorney General were legally sufficient.

7. The witness had adequate notice of the proceedings on the application for a grant of immunity.

8. The grant of immunity to the witness under Title 18, United States Code, Section 6003 was proper.

9. The government's interest in the matters under investigation, as revealed by the questions asked of the witness, is immediate, substantial and subordinating; there is a substantial connection between the information sought from the witness and the government's interest in the investigation; and the means of obtaining the information is necessary and there is a substantial possibility that the matters asked about will expose criminal activity.

10. The questions asked the witness did not violate any First Amendment rights of the witness.

11. This Court has jurisdiction of the civil contempt proceeding regarding this witness.

12. The witness had legally sufficient notice of the contempt proceedings.

13. The denial of the United States of any electronic overhearing of the witness was sufficient.

14. There has been no unlawful intrusion into the relationship between the witness and his attorney and no violation of the Sixth Amendment right of the witness in this regard.

15. There has been no abuse of the grand jury.

13. This order provided only:

"IT IS ORDERED that appellants' application for stay of execution of judgment or bail pending appeal, filed in the above styled and numbered cause, is hereby DENIED."

This action was not an indication of a belief by us that this appeal is frivolous or taken for the purpose of delay. Rather, the order reflected our conclusion that the trial judge had not abused his discretion in denying a stay or bail pending appeal. This is based on a review of the legislative history of Title 28, U.S.C., Section 1826, the House Committee report on H.R. 91–1549, 1970, U.S.Code Cong. and Adm. News, Vol. 2, page 4022. This report indicates that Section 1826 was designed to conform with Rule 46(a)(2), F.R.Crim.P. Abuse of discretion is the standard of review of denial of bail under Criminal Rule 46(a)(2). See Smith v. United States, 5 Cir. 1970, 434 F.2d 612; Welsh v. United States, 5 Cir. 1968, 404 F.2d 333.

The appellants also moved the lower court and this Court for stay pending appeal, apparently under Rule 62(g), F.R.Civ.P. Again, the accepted standard for review of such a stay is whether or not the trial court abused its sound discretion in denying the stay. See Unicon

day time restriction for decision on appeal of Section 1826, Title 28, U.S.C., we directed an accelerated briefing schedule on the merits of the appeal.

Management Corp. v. Koppers Co., 2 Cir. 1966, 366 F.2d 199; United States for Use and Benefit of Larkin v. Platt Contracting Co., 1 Cir. 1963, 324 F.2d 95. Additionally, we noted the principle established by the jurisprudence that in order to be entitled to a stay pending appeal under either Rule 62, F.R.Civ.P. or Rule 8, F.R.A.P., a petitioner must show the likelihood of his prevailing on the merits on appeal, that he is likely to suffer irreparable injury from the denial of the stay, that the other parties will not be substantially harmed by the grant of stay, and that granting the stay will serve the public interest. Long v. Robinson, 4 Cir. 1970, 432 F.2d 977; Belcher v. Birmingham Trust National Bank, 5 Cir. 1968, 395 F.2d 685. We did not consider that under the facts present these requirements had been met by the appellants, being particularly mindful that the grant of a stay would be contrary to the public interest in the orderly investigation of criminal activities by a federal grand jury.

We also note that subsequent to our emergency decision of August 18, 1972, Mr. Justice Douglas acting in a grand jury witness contempt situation after appellate decision by this Court, entered an order granting bail (Tierney, et al. v. United States, A–49 and A–80) in the course of which he stated:

"The standard for bail in civil contempt proceedings is set forth in 28 U.S.C. § 1826(b) which specified that bail *shall* be granted if the issues are not frivolous and if the appeal is not taken for delay."
(emphasis supplied)

Surely this language was not intended to set absolute parameters for civil proceedings. Even in appeals from refusal of bail following criminal convictions courts have the right to consider other circumstances. See Mr. Justice Douglas' opinion in Carbo v. United States, 82 S.Ct. 662, 7 L.Ed.2d 769 (1962). Despite the question which this new ruling raises, we adhere to our holding that the trial court must make the same attempt to evaluate the likelihood of his own error as he would make in other civil proceedings where he is asked to stay his action pending an appellate review.

On September 6 our reasons for denying bail or stay pending appeal because academic. On that date the Clerk of the Supreme Court released an August 31 or-

On September 11, because of a breakdown in briefing schedule, due in part at least to the failure of counsel to receive opponents' original briefs until after the

der by Mr. Justice Douglas granting the application for bail and directing that the petitioners be released on bail "in such form and amount as the district court deems appropriate". This action was taken on appellants' ex parte application despite an earlier application to the Circuit Justice of this Circuit, Mr. Justice Powell, who denied the application on August 22. We set out here the full text of this order:

"This application for bail has previously been denied by my brother Powell and that normally would be enough for my denial, but *there has emerged the troublesome question concerning electronics surveillance of petitioners' attorney in which I think a hearing is required.* If evidence was obtained and used before the grand jury so acquired then 18 U.S.C., Section 2515 was violated and Gelbard v. United States, [408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179,] decided by us on June 26, 1972 controls. Moreover I am deeply troubled by the charge that enough evidence has been filed to sustain an indictment making colorable the use of the grand jury for further purposes. That question is akin to # 71–850, U. S. v. Mara to be argued this term. For these reasons I differ from my brother Powell and order petitioners to be released on bail in such form and amount as the district court deems appropriate." (Emphasis added.)

A day or so later the release of the appellants on recognizance bonds was effected by order of the district court.

Although Mr. Justice Douglas' order has issued in a purely civil proceeding and this Court obviously cannot challenge its procedural correctness, we feel compelled to record our confusion. The legislative history of Title 28, U.S.C., Section 1826, supra, expressly indicates that it was intended to conform to the bail standard of Rule 46(a)(2), F.R.Crim.P. That rule provides in pertinent part: "Pending appeal to a court of appeals, bail may be allowed by the trial judge, by the court of appeals, or by any judge thereof or by the *circuit justice,* to run until final termination of the proceedings in all courts." (emphasis added). Yet as noted, the Circuit Justice for this circuit, Mr. Justice Powell, denied this application for bail on August 22, 1972, before it was presented to Mr. Justice Douglas.

long Labor Day weekend (September 1 to September 5), and taking note of appellants' unopposed motion for extension of Section 1826's thirty day time limit if necessary to insure thorough consideration and an informed decision, we provided for reply briefs through September 15 and fixed 10 days thereafter, September 25, 1972, as our time limit for decision by written opinion or, if found necessary, by order with opinion to follow.

The issues on appeal as stated by the appellants are as follows:

"1. Whether consistent with the Due Process Clause of the Fifth Amendment and Rule 16 of the Federal Rules of Criminal Procedure, a witness can be compelled to answer questions before a federal grand jury which clearly related to an indictment returned by that grand jury and which were asked prior to the return of that indictment when the government has not even made a 'modest showing' that the testimony is not sought for the purpose of gathering evidence for trial?

2. Whether consistent with the Sixth Amendment right to counsel, the Fourth Amendment and the Due Process Clause of the Fifth Amendment, a witness can be required to answer questions before a grand jury when the government has not denied allegations that his attorney has been overheard by means of electronic surveillance?

3. Whether consistent with the Fourth Amendment and 18 U.S.C. §§ 3504, 2510–20, the denial by Guy L. Goodwin of electronic surveillance of appellants was adequate where the denial did not specify the agencies searched, what premises the denial referred to, and where appellants were denied the right of cross-examination?

4. Whether consistent with the Fifth Amendment right not to incriminate oneself, a witness can be compelled to answer questions before a federal grand jury after being informed that he is a potential defendant?

5. Whether consistent with the Due Process Clause of the Fifth Amendment, an order compelling testimony before a federal grand jury is valid when made pursuant to a government application which fails to follow Justice Department guidelines established for making such applications?

6. Whether a witness can be require to appear and testify before a federal grand jury when the circumstances surrounding the issuance of his subpoena and the conduct of the grand jury proceedings constitute an abuse of the grand jury process?"

After consideration of the briefs and record and of August 18's oral argument to the extent that it bore on the merits, we conclude that error on the part of the trial court is not demonstrated as to any of the stated issues except for No. 2, but that the question there raised mandates that we set aside the contempt orders and remand this case to the district court for further proceedings. For convenience this opinion will deal with the other issues before taking up the surveillance of counsel issue (No. 2 above), which we reserve for last.

*Grand Jury Testimony Sought to Gather Evidence for a Trial*

(Appellants' stated issue No. 1)

The appellants complain that they should not be compelled to answer questions relating to an indictment already returned covering essentially the same transactions or events. The following facts are cited: appellants were ordered to answer identical questions before and after the return of the indictment against the "Gainesville Six"; these questions directly related to the events surrounding the crimes charged in the indictment against the "Gainesville Six"; the grand jury returned the indictment against the "Gainesville Six" on July 13, 1972, without the benefit of

any testimony by the appellants. It is said that this situation impels a conclusion that the government seeks to compel their testimony solely, or principally, for the purpose of gathering evidence to be used in the prosecution of the "Gainesville Six", and that therefore the government must make at least a "modest showing" of the propriety of the questions in rebuttal to this implication.

The cases cited by appellants in this connection all arose under the general immunity statute, Title 18, U.S.C., Section 2514. See, e. g., In re Vericker, 2 Cir. 1971, 446 F.2d 244, 247. Section 2514 allows the use of immunity as an investigatory device only in the limited circumstances spelled out in Section 2516 (generally, § 2514 immunity may be granted only when certain enumerated crimes are being investigated by a grand jury). The use of immunity under Title 18, U.S.C., Section 6002, as granted to appellants here, is not so limited. Section 6002 covers "any proceeding before or ancillary to . . . a grand jury of the United States". The cases cited by appellants thus are inapplicable to the situation here.

It is true, as the appellants maintain, that "it is improper to use the grand jury for the purpose of preparing an already pending indictment for trial". United States v. Dardi, 2 Cir. 1964, 330 F.2d 316. It is a misuse of the grand jury to use it as a substitute for discovery. The law in this area is well stated in In re Russo, 9 Cir. 1971, 448 F.2d 369:

> "The grand jury is still in session. We cannot assume that no further information appropriate to their inquiry will be obtained from appellant upon the answering of the questions posed. There may well be involved additional defendants, or additional criminal acts shown to have been committed by Ellsberg. The effective functioning of a grand jury would be seriously affected if it was required to delay its return of an indictment to await an attempt to obtain evidence from a recalcitrant witness." 448 F.2d at 374.

The situation before us is not one where the sole or principal purpose in further inquiry of appellants is to gather information for the trial of the "Gainesville Six". Here, the indictment against the "Gainesville Six" identified two of appellants as co-conspirators and further charged that other persons to the grand jury unknown participated in the conspiracy. A proper purpose for subpoenaing appellants would be to inquire of them as to the surrounding circumstances with a view to discovery of the identity of the alleged "unknown persons".

We think also that the well recognized presumption as to the regularity of the acts of public officials—here the grand jury and its advisors—bears heavily against the appellants on this issue. See, among other cases, Consolidated Edison Co. v. N. L. R. B., 1938, 305 U.S. 197, 226, 59 S.Ct. 206, 215, 83 L.Ed. 126, 134, and United States v. Chemical Foundation, 1926, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131. In the latter case it was stated:

> "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

*Op. cit.* at pages 14–15, 47 S.Ct. at 6.

Error is not demonstrated in the trial court's conclusion that:

> "9. The government's interest in the matters under investigation, as revealed by the questions asked of the witness(es), is immediate, substantial and subordinating; there is a substantial connection between the information sought from the witness(es) and the government's interest in the investigation; and the means of obtaining the information is necessary and there is a substantial possibility that the matters asked about will expose criminal activity." Fn. 12 supra.

We may not assume, we think, lacking a substantial showing to the contrary,

that ". . . no further information appropriate to (the grand jury's) inquiry will be obtained from appellant(s) upon the answering of the questions proposed". *Russo, supra,* 448 F.2d, at 374. See further, United States v. Procter & Gamble Co., 1958, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077.

### *Adequacy of Government Denial of Electronic Surveillance of Appellants*

(Appellants' stated issue No. 3)

█ The appellants complain that the government's affidavits denying electronic surveillance of the appellants are inadequate.[14] Relying on our recent decision in In Re Tierney, 5 Cir., 465 F.2d 806 and In Re Morahan, et al., 5 Cir. 1972, 465 F.2d 806, the appellants maintain that the affidavits should have specified, by name, the agencies checked, and further that the person signing the affidavit that he caused the search to be made (Guy L. Goodwin, Fn. 6, supra) should have been subjected to cross-examination. In *Tierney* we approved the procedure utilized by the district judge of requiring testimony under oath and subject to cross-examination from the Department of Justice attorney who made the responsive affidavit denying electronic surveillance on the part of the United States. That testimony included a statement that a check had been made with every government agency having any connection with the investigation, including, in addition to the F.B.I. and the Bureau of Narcotic and Dangerous Drugs, the Department of the Treasury, which encompasses the Secret Service, Customs, the Internal Revenue Service, and the Alcohol, Tobacco and Firearms Division. Here the Goodwin affidavit, Footnote 6, supra, made the conclusionary statement that "he caused an inquiry to be made with the appropriate Federal Government agencies to determine if there has been any electronic surveillance of the conversations of . . . ." and that there has been no such surveillance of (each appellant named by separate affidavit) and no "electronic surveillance of any conversations occurring on premises which were known to have been owned, leased or licensed by him." The affiant was not permitted to be sworn and cross-examined, and the district court refused to permit a Department agent claimed by appellants' counsel to be familiar with government surveillance procedures to be called to the stand.

█ While the comprehensive procedure followed by the District Court in *Tierney* is preferable when circumstances permit, we do not read *Tierney* to require such procedure. Was the procedure below fatally defective? We conclude that it was not. The form of affidavit used here has passed muster as a sufficient denial of electronic surveillance in both the First and Third Circuits. See In Re Marx, 1 Cir. 1971, 451 F.2d 466; In Re Horn, 3 Cir. 1972, 458

14. In Gelbard v. United States, 408 U.S. 2357, 92 S.Ct. 2357, 33 L.Ed.2d 179 (decided June 26, 1972), the Supreme Court held that a grand jury witness adjudicated in civil contempt under Title 28 U.S.C., Section 1826, for refusing to testify may invoke as a defense Title 18, U.S.C., Section 2515. Section 2515 provides that "[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any . . . proceeding in or before any . . . grand jury . . . ."

The Supreme Court said in *Gelbard*:

"Our conclusion that § 2515 is an available defense to the contempt charge finds additional support in 18 U.S.C. § 3504 . . . Section 3504 is explicit confirmation that Congress intended that grand jury witnesses, in reliance upon the prohibition of § 2515, might refuse to answer questions based upon the illegal interception of their communications. . . . § 3504 . . . necessarily recognizes that grand jury witnesses may rely upon the prohibition of § 2515 in claiming that the evidence sought from them is inadmissible in the grand jury proceedings. Upon such a claim by a grand jury witness, the Government . . . is required under § 3504(a)(1) to 'affirm or deny the occurrence of the alleged' illegal interception."

F.2d 468, and In Re Grumbles, 3 Cir. 1971, 453 F.2d 119. We hold that the Goodwin affidavits sufficed. Nevertheless we strongly echo the Third Circuit's caution that this form of affidavit "is far from a 'model' either in terms of its scope or forthrightness". In Re Horn, 3 Cir. 1972, 458 F.2d 468, 471.

### Fifth Amendment Right Against Self-Incrimination

(Appellants' stated issue No. 4)

We find this contention to be without colorable merit. Two of the appellants, Beverly and Horton, were told on July 11 or 12 when they first appeared before the grand jury that they were potential defendants. Chambers and Beverly were named in the indictment as co-conspirators. Horton was not so informed and was not named in the indictment. But each appellant was given a full *Miranda*-type warning when he appeared before the grand jury, as the decided cases require. See, e. g., Mattox v. Carson, M.D.Fla.1969, 295 F.Supp. 1054, 1059.

We are urged to hold that although these appellants may be *called* before the grand jury, they may not be compelled there to testify. The argument goes that, despite a grant of immunity to the witness, members of the grand jury in voting on an indictment, cannot be expected to sort out and discard information received from the immunized-witness-potential defendant, from information received from unimpeachably usable sources.

We observe preliminarily that any witness before a grand jury is under some risk of future indictment. Until the investigation is complete and all true bills have been returned, the identity of indicted defendants cannot be known. Further, the only way a grand jury can reach a decision as to possible criminal responsibility is by questioning persons having knowledge of the transaction under scrutiny. Therefore many procedural due process safeguards afforded a defendant on trial are not available to a grand jury witness. See, e. g., Hannah v. Larche, 1960, 363 U.S. 420, 449, 80 S.Ct. 1502, 4 L.Ed.2d 1307. No indicted defendant is involved here, nor even any prior custodial interrogation. We think these witnesses are not entitled to seek a shield against giving grand jury testimony. Their protection at a possible trial is another matter, for another day.

This question might have presented a problem [15] prior to Kastigar v. United States, 1972, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212, which held that a grant of "use immunity" (as opposed to "transactional immunity") under Title 18, U.S.C., Section 6002, was sufficient protection of the witness' Fifth Amendment privilege against self-incrimination. The Supreme Court said:

"We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being 'forced to give testimony leading to the infliction of "penalties affixed to . . . criminal acts." ' [Ullmann v. United States, 350 U.S. 422, 438–439, 76 S.Ct. 497, 100 L.Ed. 511 (1959), quoting Boyd v. United States, 116 U.S. 616, 634, 6 S. Ct. 524, 29 L.Ed. 746 (1886)]. Immunity from the use of compelled testimony and evidence derived directly

---

15. See, e. g., U. S. A. v. John Joseph Kelly, 5 Cir. 1972, 464 F.2d 709.

and indirectly therefrom affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." 406 U. S. at 453, 92 S.Ct. at 1661, 32 L.Ed.2d at 222.

We hold that the immunity order issued by the district court was, under *Kastigar,* a sufficient protection of the appellants' Fifth Amendment privileges. At the same time, we emphasize, as did the Supreme Court in *Kastigar,* and as we did in *Kelly,* supra, Footnote 8, that the Fifth Amendment requires not only that the compelled testimony not be used against the witness but imposes a "total prohibition on use . . . barring . . . use . . . as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures". 406 U.S. at 406, 92 S.Ct. at 1664, 32 L.Ed.2d at 226.

In language extremely significant in the present context, and quoted by us in *Kelly,* the Supreme Court in *Kastigar* continued:

"A person accorded this immunity . . . and subsequently prosecuted, is not dependent for the preservation of his rights upon the integrity and good faith of the prosecuting authorities. As stated in *Murphy* [Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678]:

' "Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." 378 U.S., at 79, n. 18, 84 S.Ct. 1594 at 1609.'

"This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." 406 U.S. at 460, 92 S.Ct. at 1665, 32 L.Ed.2d at 226.

*Claimed Failure of the Government Application for Use Immunity under Title 18, U.S.C. § 6003 to Follow Justice Department Guidelines*

(Appellants' stated issue No. 5)

Appellants urge that the United States was required below to show affirmatively that its applications for immunity for them strictly followed internal guidelines of the Department of Justice, and that it was error not to require such a showing at an adversary hearing for this purpose.[16] The guidelines in question are set forth in a letter dated November 30, 1971, from then Deputy Attorney General Richard G. Kleindienst to Honorable Emanuel Celler, Chairman of the House Judiciary Committee. Appellants assert that these are "in *addition to* and independent of prerequisites commanded by 18 U.S.C. §§ 6002, 6003 and 28 C.F.R. § 0.175."

The answer to this contention is supplied by our decision in In re Tierney, supra, 465 F.2d 608, where some of the same counsel who represent appellants in a similar setting sought to raise the same objection. We said:

"The guidelines on which appellants rely are directed to the handling of requests by United States Attorneys, within the Department of Justice for permission to seek orders granting immunity. They are not directed to the procedural or substantive rights of prospective witnesses." (Printed opinion, *Tierney,* page 813)

The same issue was raised and similarly disposed of by the Third Circuit in In

16. The district court's conclusions of law as to the procedure followed below are shown as items 6, 7, 8 and 9, Footnote 12, supra.

re Horn, 3 Cir. 1972, 458 F.2d 468, 473. No adversary hearing was required as to compliance with internal Justice Department guidelines with respect to the grants of immunity to appellants.

### Abuse of Grand Jury Process

(Appellants' stated issue No. 6)

The sixth issue as set forth by appellants in their preliminary statement of issues [17] was as quoted, page 17, supra. On brief, the issue is stated by appellants as follows:

"Appellants could not be required to testify before a Federal Grand Jury when their subpoenas were in violation of their rights protected by the First Amendment."

The counter-statement of the appellee's brief is succinct and accurate, and refutes the contentions advanced by appellants. We quote: "The First Amendment Affords Appellants No Excuse from their Obligation to Appear and Testify Before a Grand Jury."

The four appellants and nineteen other members and associates of VVAW were subpoenaed to appear before the grand jury on Monday morning, July 10, 1972 at 9:30 A.M. This was the morning of the opening session of the Democratic National Convention at Miami Beach, Florida. Parade permits had been obtained for VVAW anti-war demonstrations at Miami Beach. Appellants requested adjournments in order for them to picket and take part in the scheduled anti-war demonstrations. When the request was refused by the U. S. Attorney they sought a temporary restraining order to permit their exercise of these claimed First Amendment rights, which was denied by the district court.[18]

Because twenty-three witnesses could not of course appear at the same time, and further because of the simultaneous timing of the commands of the subpoenas to appear coinciding with the opening of the Convention, appellants assert that substantial questions are raised as to misuse of grand jury process to prevent exercise of their First Amendment rights. They urge that the manner in which the grand jury proceedings continued underscored the abuse of process. They point out that after calling twenty-three persons to appear on the day of the first scheduled VVAW demonstration, four witnesses were finally dismissed two days later and all but two [19] of the remainder were dismissed on July 13, the last day of the Convention.

The argument continues that since many of those under subpoena throughout the Democratic Convention were never called before the grand jury, and there is nothing of record to indicate that the appellants were selected on other than a random basis for questioning and a tender of immunity, these appellants were also being held in Tallahassee under subpoena with the express purpose of preventing their exercise of First Amendment rights by demonstrating against the Vietnam war in Miami Beach. Lastly, they say that even if the subpoenas were not intended to have that effect, nevertheless they did have exactly such an effect, one that could easily have been obviated by a short continuance of the grand jury session, thus "narrowing the demands of the government as required by the Constitution".

Cited in support of appellants' position are such cases as Bates v. City of Little Rock, 1960, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480; NAACP v. Alabama ex rel. Patterson (cited in appellants' brief as NAACP v. Button), 1958, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488, and Shelton v. Tucker, 1960, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231, protect-

---

17. Required to be filed by our instructions fixing the abbreviated briefing schedule.

18. Vietnam Veterans against the War v. Kleindienst, TCA–1843, N.D.Fla., July 10, 1972. (unreported).

19. These were excused to return August 7. On July 25 their subpoenas were adjourned without day.

ing NAACP membership lists and the like from compelled disclosure to state authorities on First Amendment grounds of freedom of association absent a showing of compelling state interest to require disclosure.

■ ■ It is simply a statement of long recognized horn-book principles of constitutional law to say that no government, either state or federal, may encroach upon First Amendment rights without the demonstration of a compelling interest. But such a principle has slight application in the situation here under examination. Of the twenty-three witnesses under subpoena, six (the "Gainesville Six") were indicted, two others (the appellants Beverly and Chambers) were named in the indictment as co-conspirators, and this was accomplished through the testimony of other witnesses during the three days, July 10–July 13, when a great deal of the time and efforts of the grand jury, its attendant advisors, and the district judge was taken up with dealing with these appellants, their refusal to testify, the grant of immunity to them, their continued refusal to testify, and the resultant contempt proceedings against them. It is thus clear after the fact that the grand jury was called together for the investigation of serious criminal offenses and that it did not simply keep these appellants or other witnesses idly waiting around. It is of course common practice, of which we take judicial notice, for grand juries to schedule the investigation of several cases, each involving a number of witnesses, for a single day. Without in any way criticizing the appellants or their counsel for the exercise or the attempted exercise of what they consider fundamental rights, we suggest that grand jury testimony from twenty-three or more witnesses during a one or two day session is not an unreasonable expectation, provided of course the witnesses turn out to be cooperative.

We note further the district court's conclusions [20] 9 and 10 (Footnote 12, supra) to the effect that:

"9. The government's interest in the matters under investigation, as revealed by the questions asked of the witness, is immediate, substantial and subordinating; there is a substantial connection between the information sought from the witness and the government's interest in the investigation; and the means of obtaining the information is necessary and there is a substantial possibility that the matters asked about will expose criminal activity.

10. The questions asked the witness did not violate any First Amendment rights of the witness."

The recent Supreme Court decision in Branzburg v. Hayes, 1972, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626, dealing with and rejecting the contention that news sources of reporters are entitled to First Amendment protection against grand jury inquiry, reiterates the overriding importance of grand jury testimony, whatever its effect on news gathering:

"Fair and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government, and the grand jury plays an important, constitutionally mandated role in this process. On the records now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering which is said to result from insisting that reporters, like other citizens, respond to relevant questions put to

---

20. These two statements are set forth as conclusions of law in the district court's August 7 "Findings of Fact and Conclusions of Law" following the July 25 hearing. Nevertheless they are more in the nature of findings from the evidence, and are probably binding on us under the "clearly erroneous" rule of Rule 52(a) F.R.Civ.P. We do not labor the point but simply note as demonstrated in the text that whether findings or conclusions they find clear support in the record.

them in the course of a valid grand jury investigation or criminal trial." 408 U.S. at page 690–691, 92 S.Ct. at page 2660–2661.

The duty of testifying being subordinating to the potential "chill" upon news gathering and dissemination, it seems to us on *a fortiori* grounds to be much more subordinating to the rights of these appellants to appear and demonstrate at the Democratic Convention. They claimed the right to demonstrate merely on their own behalf. They were neither delegates nor alternates, and had no greater nor lesser right to be excused from grand jury attendance than any other private citizen.

We agree with and quote verbatim rather than paraphrase, the closing paragraph of appellee's brief as to this issue:

"The appellants have chosen a peculiar context indeed in which to raise the allegation of abuse of the grand jury. If, indeed, the law enforcement process was being used to suppress dissent, it is the grand jury who with the witness' cooperation, could take remedial action. It is the constitutional right of these witnesses *not* to face prosecution except on the indictment of a grand jury, and it is this body which is historically vested with the responsibility of preventing specious prosecutions. The grand jury's response to the investigation was to indict six of the VVAW leaders and to name both Beverly and Chambers as co-conspirators. We believe this commentary has fairly vindicated this investigation, and rejected any allegations of bad faith now asserted."

We find no merit in the claim that the appellants should have been excused from their obligation to appear and testify before the grand jury in order for them to engage in demonstrations against the Vietnam war at the Miami Beach Democratic National Convention.

*Possible Government Electronic Surveillance of Counsel and the Necessity for a Reponse Thereto*

(Appellants' stated issue No. 2)

We now take up the question of the possible electronic surveillance of petitioners' counsel and the necessity of a response thereto. Without requiring any response by the government to the claims of electronic surveillance of appellants' attorneys, the district court denied motions to require disclosure of such surveillance of any counsel of record.

▆ Clearly there was no error in this treatment of the Reif affidavit (quoted in Footnote 11, supra) by the August 7, 1972 order. "Imprecise speculation" is the apt characterization given it by the trial court in his order. It was also speculation as to an impossible occurrence: that an overhear stated in *Tierney* to have occurred on June 17, 1972, might have been in reference to the attorney-client relationship between Reif (or another attorney involved both in *Tierney* and this case) and one or more of the appellants. This is patently impossible since no appellant claims that he procured assistance of counsel until after service of the grand jury subpoena, issued July 7 for appearance before the grand jury at 9:30 A.M. on Monday, July 10, 1972. The overhear of an unidentified (on this record) attorney on June 17 could clearly not have referred to a relationship originating between July 7 and July 10.

There remains the question of possible overhears raised by the affidavit of one of appellants' attorneys, Nancy Stearns, dated and filed July 13, 1972, in connection with other affidavits on file. The Stearns affidavit dealt with noises heard over Tallahassee telephone number 385-2343, and the inability to get a dial tone over that telephone at 8:30 P.M., July 12. The other number said to be finally reached was the residence of another subpoenaed witness, James Frank Hall, where the appellant Beverly was staying along with others of the appellants.

That number is stated to be 575-2681, and the Stearns affidavit may clearly be read to indicate that there were numerous calls between these two numbers.

Scott Camil (one of the "Gainesville Six") executed a July 13 affidavit as to strange noises emanating from his Gainesville telephone and the belief that this telephone was bugged. That number is 378-0774 and his home is also the headquarters for the Florida Region of the VVAW. The appellant Wayne Beverly executed a July 13 affidavit corroborative of the Nancy Stearns affidavit. The July 13 affidavit of the appellant Jack Jennings states a belief that Tallahassee number 575-2681 was the subject of illegal electronic surveillance based on the Nancy Stearns affidavit, and asserts that he talked with his attorney, Ms. Doris Peterson, over that telephone on two occasions.

The responsive government affidavits of Guy L. Goodwin (see Footnote 6, supra) denied electronic surveillance of the conversations of each of the appellants and further denied electronic surveillance of any conversations occurring on premises known to have been owned, leased or licensed by each of them, whether or not such appellant was present or participated in those conversations. As we construe the numerous affidavits put in the record by appellants, this denial would suffice to cover the home telephone of appellant John Chambers at St. Petersburg, Florida (number not stated), the Gainesville, Florida, home telephone number 373-4348 of the appellant Bruce Horton, the Austin, Texas, home telephone of Wayne Beverly, No. 451-2841, and a telephone on any premises known to be owned, leased or licensed by the appellant Jack L. Jennings, which may be construed to include the Gainesville VVAW headquarters which is also the residence of Scott Camil, that number being 378-0774. The Goodwin affidavits must be construed to deny electronic surveillance of the premises or the telephone at the Tallahassee VVAW house, the James Frank Hall residence, since the Hall affidavit indicates that all four of the appellants were staying at that place, 1636 Pepper Drive, Tallahassee, and the Goodwin affidavits deny the surveillance of premises "owned, leased or licensed" to each of the appellants.

■ The Goodwin affidavits filed by the government, however, may not be construed to deny surveillance of the Tallahassee telephone number 385-2343, identified by the Stearns affidavit as the telephone at "the home where my co-counsel and I have been staying since we arrived in Tallahassee for this hearing". This leaves open and undenied the suggestion that there were overhears of conversations between counsel for the appellants and their clients or with third parties as to matters confidential between attorney and client.

In the welter and confusion of the hectic three or four days, July 10–13, 1972, the failure of the district judge to spot this single, undenied allegation is not surprising. It required our extensive sifting and cross-checking of the affidavits on file to conclude that this telephone number was not covered by the Goodwin denials. The district judge simply construed these denials as being broader than they were.

In oral discussion at the motion hearing the district judge noted that neither the motions nor the accompanying affidavits suggested surveillance of conversations relating to any of the four appellants. He pointed out that the government denial affidavits of Mr. Goodwin then on file specifically negated electronic surveillance of conversations of the appellants, which would include conversations with their attorneys, and also the telephones of those individuals. But this approach would overlook an appellant's conversation with his attorney from a number not his own and would overlook the possible electronic surveillance of the attorney's conversations with third persons regarding privileged attorney-client business.

■ The United States makes a strong argument with respect to the lack of standing of the appellants to raise at the grand jury stage the question of ille-

gal electronic surveillance of counsel. But we think that those arguments are answered, as far as this Circuit is concerned, by our recent case of *In re Tierney*, supra, where we noted that the district court had assumed that the witness had standing to raise a "claim of illegal electronic surveillance of them and their counsel". Our holding is clear: "We hold that they do have such standing". (*Tierney*, 465 F.2d page 812). This constituted, we think, a rejection of the government contention, page 26, Note 24, of the *Tierney* brief: "The defendants, thus, have no standing to challenge this surveillance, see e. g. Alderman v. United States, supra, 394 U.S. 165, at 173, note 7, 89 S.Ct. 961, 22 L.Ed.2d 176. 19 [18] U.S.C. 3504(a)(1); Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972)."

Practical considerations of the procedural turn this case has taken enter strongly into our resolution of this question. These same considerations prompt us to warn that we decide this case only, and only in the posture it has now assumed. As a preliminary observation and with due deference to Mr. Justice Douglas' bail order action, we note that these developments cause us such perplexity and concern that we feel compelled to advert to them.

The release of the appellants on recognizance bonds, in compliance with the August 31 order of Mr. Justice Douglas (quoted in full, Footnote 13, supra) has suspended the only compulsion which the trial court saw fit to impose in an attempt to secure facts which a grand jury was otherwise entitled to have from witnesses that had been granted proper immunity. Thus this grand jury cannot proceed further so long as the sanction of commitment for contempt is withheld.[21] We note that Mr. Justice Douglas by order and opinion of September

12 has, again after a prior denial of bail by Mr. Justice Powell, ordered the unsuccessful appellants in *Tierney*, supra, released on bail pending application for certiorari to the Supreme Court.[22]

We think our discussion under the heading "Grand Jury Testimony Sought to Gather Evidence for a Trial (Appellants' stated issue No. 1)", pages 18–20 of this opinion, effectively disposes of one of the two questions raised by Mr. Justice Douglas in his bail order in this case: "Moreover I am deeply troubled by the charge that enough evidence has been filed to sustain an indictment making colorable the use of the grand jury for further purposes. That question is akin to #71–850, U. S. v. Mara, to be argued this term". Vacation of the contempt orders and a remand to the district court to permit specific admissions or denials of the suggestion of illegal electronic surveillance of counsel, followed by a hearing thereon, should dispose of the other question referred to in the Douglas order: "[T]here has emerged the troublesome question concerning electronic surveillance of petitioners' attorney in which I think a hearing is required".

The orderly function of this grand jury is now by reason of this procedural turn stalled on dead center. We have tried in this opinion to deal comprehensively with each of the other grounds raised by the appellants as excusing their giving testimony before the grand jury. Our remand will permit this question of electronic surveillance of counsel to be promptly and completely laid to rest and the business of the grand jury to go forward with dispatch.

We vacate the contempt order and reverse the judgment below for the reasons discussed above. The United States will be free at any time after our man-

21. Certainly we would not suppose that the district court would be free to violate the spirit of Mr. Justice Douglas' present order through the use of any substitute form of civil contempt compulsion such as a continuing fine.

22. The short opinion accompanying his *Tierney* order iterates Mr. Justice Douglas' troubles with *Beverly* (the instant case) and his view of the similarity of the issues inhering in *Tierney*, *Russo* and *Beverly*.

date (which we order to issue immediately) goes down to subpoena any or all of the appellants-witnesses and to require their testimony under a grant of immunity under Title 18, U.S.C., Sections 6002, 6003. If affidavits as to suspected electronic surveillance of counsel's conversations are then filed, the district judge should require specific affirmances or denials under Title 18, U.S.C., Section 3504(a)(1) of any *unlawful* act of surveillance,[23] as the prerequisite to civil contempt orders on refusals by the witness to testify.

 In reversing this case for the failure of the United States to affirm or deny unlawful electronic surveillance of counsel, we do not intend to indicate approval of the sufficiency as to form and content of the appellants' affidavits held here to require such response. We think such affidavits should as a minimum name the counsel in question, the outside dates of attorney representation and suspected surveillance, the grand jury witnesses represented by such counsel, as well as the numbers of the telephones over which the surveillance might have occurred and any other available data tending to identify the suspected surveillance. Although "the Government has the answers", its ability within a reasonable time to come up with the answers in such a way as to offer meaningful protection to appellants' constitutional rights, should be aided by specificity and not hampered by vagueness. The district court will have wide latitude in determining the sufficiency and objectivity of factual allegations brought forth as a basis for claims of unlawful attorney surveillance. There is room for balance between due regard for the witnesses' constitutional rights as protected by the statute, on the one hand, and the right of the United States to proceed with reasonable promptness with its grand jury investigation, on the

other. The district court by requiring sharper delineation of the possible limits of the suspected surveillance is in a position to preserve such a balance.

The contempt orders appealed from are vacated and the judgment of the district court is reversed for further proceedings consistent with this opinion.

Let our mandate issue at once.

---

23. Only *unlawful* acts are required to be affirmed or denied by the statute, Title 18, U.S.C., Section 3504(a)(1), upon "a claim . . . that evidence is admissible because it is the primary product of an unlawful act or because it was obtained by exploitation of an unlawful act. . . ." See the concurring opinion of Mr. Justice White in *Gelbard*, supra, 408 U.S. 41, 92 S.Ct. 2357, at p. 2372, 33 L.Ed.2d 179.