**In re Edgar MAURY SANTIAGO, Appellant.**

No. 76–1079.

United States Court of Appeals, First Circuit.

Argued Feb. 11, 1976.

Decided April 16, 1976.

Paul Schater, with whom Juan R. Aceve-do, Hato Rey, P.R., was on brief, for appellant.

Julio Morales Sanchez, U. S. Atty., San Juan, P.R., with whom Jorge Rios Torres, Asst. U. S. Atty., San Juan, P.R., was on brief, for appellee.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal from the district court's order holding Edgar Maury Santiago in civil contempt pursuant to 28 U.S.C. § 1826(a), for his refusal to answer questions before a grand jury. The grand jury investigation concerned the theft of 3,650 pounds of explosive material known as Iremite from a warehouse in Puerto Rico in July, 1974. When first brought before the grand jury, Maury refused to answer any questions except as to his identity, citing, among others, the ground of self-incrimination. He was thereupon brought before the district court and, on motion of the government, granted use immunity under the provisions of 18 U.S.C. § 6001 *et seq.* Upon his return to the grand jury, Maury continued his refusals to answer. The government instituted civil contempt proceedings against him. At the show cause hearing, the district court determined that Maury's claims of "just cause", *see* 28 U.S.C. § 1826(a),[1] were insufficient to free him from his duty to testify, and found him in contempt. The district court ordered him committed, but granted bail pending appeal.[2] Our task, on appeal, is to review the court's determination that Maury has no "just cause" for refusing to testify.

Maury claims that the government's procedure in granting him immunity was defective, and therefore he can continue to assert his Fifth Amendment privilege. He contends that there was no showing that the United States Attorney complied with the statutory preconditions for immunity under 18 U.S.C. § 6003(b).[3] The record, however, establishes that an adequate showing was made. The U. S. Attorney filed a letter from a proper official of the Justice Department authorizing him to request immunity for Maury. He stated in open court that Maury's testimony was, in his opinion, necessary to the public interest. The judgment of the U. S. Attorney is

1. 28 U.S.C. § 1826(a) provides: "Whenever a witness in any proceeding before . . . any . . . grand jury of the United States refuses without just cause shown to comply with an order of the court to testify . . . the court . . . may summarily order his confinement . . . ."

2. Under Rule 21 of the Rules of the United States Court of Appeals for the First Circuit, the "unsuccessful party" on the bail issue may waive the thirty day time limit for disposing of appeals from orders of contempt under 28 U.S.C. § 1826. As there were technical difficulties in preparing the parties' briefs in this case, the time limit was waived.

3. Section 6003(b) provides:
   "(b) A United States Attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—
   (1) the testimony or other information from such individual may be necessary to the public interest; and
   (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of privilege against self-incrimination."

supervisor of the local F.B.I. office, the

unreviewable in this matter, *In re Lochiatto*, 497 F.2d 803, 804 n. 2 (1st Cir. 1974); *In re Kilgo*, 484 F.2d 1215, 1219 (4th Cir. 1973), and we see no reason to require that this representation be put in affidavit form. The final requirement was satisfied when the court reporter read Maury's statement in support of his refusal to testify into the record. We see no merit in appellant's challenge to the grant of immunity.

■ Maury also claimed a statutory privilege not to testify based on allegations of electronic surveillance pursuant to *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). This court has recently reviewed the obligation of the government in response to a claim of privilege under 18 U.S.C. § 3504 by a grand jury witness. *In re Quinn*, 525 F.2d 222 (1st Cir. 1975); *see also In re Hodges*, 524 F.2d 568 (1st Cir. 1975). This case involves the application of the principles of *Quinn* to a different factual situation.

Under *Quinn*, the first step in evaluating a denial of electronic surveillance is the identification of the governmental agencies which contributed information to the investigation, and which participated in the preparation for the grand jury proceedings. In the present case, F.B.I. Agent Smolinski, who is currently in charge of the investigation into the theft of the Iremite, testified that all the questions to be propounded to the witness were based on information generated by the F.B.I. alone. Although Agent Smolinski was relying on his review of the investigation file and on conversations with the former case agent who actually conducted the investigation, and the supervisor of the local F.B.I. office, the district court clearly credited his testimony. While there is some doubt in our minds that this representation is completely accurate, the agent's testimony was uncontradicted as to this point and not inherently incredible.[4] Therefore, we hold that the testimony was legally sufficient, albeit barely so, to identify the local F.B.I. office as the only agency to be canvassed in a search for illegal electronic surveillance.

The question then becomes whether the U. S. Attorney and the case agent were in a position, through inquiry, "reasonably to ascertain whether or not relevant illegal activities took place". 525 F.2d at 225. The U. S. Attorney, Morales Sanchez, testified that he had asked three F.B.I. agents, Mr. Dwyer, the F.B.I. Supervisor, Mr. Ganon, the case agent for most of the investigation, and Mr. Smolinski, the current case agent, whether they had conducted any electronic surveillance in relation to the investigation of the theft of the Iremite or in relation to Maury. He testified that their answers were in the negative.

Mr. Smolinski, as noted above, also testified. He stated that he made inquiries of Messrs. Dwyer and Ganon, and received the answer that no electronic surveillance had been performed. He testified further that a thorough review of the case file revealed no notation of electronic surveillance.

We affirm the district court's judgment that the government's denial was sufficient to satisfy the requirements of *In re Quinn, supra*.[5] We note, however, that the choice

---

4. There were some minor inconsistencies in the agent's testimony. Smolinski had been in Puerto Rico for approximately one and one-half months. He took over the investigation into the theft of the Iremite from another agent who had left Puerto Rico before the date of the hearing. He lacked familiarity with several details of the case. For example, at one point, he testified that the F.B.I. investigation began in October or November of 1975. This statement conflicts with the record which shows that the letter of authorization from the Justice Department concerning immunity for Maury was dated on August 11, 1975. Later, however, the agent conceded that he really did not know the

date the F.B.I. started the investigation except that it was in 1975. He also knew that the police of Puerto Rico investigated the theft from the date of occurrence in 1974.

5. Because the government's duty is to "affirm or deny" the use of electronic surveillance or evidence derived therefrom in formulating the questions to be propounded to the grand jury witness, *see* 18 U.S.C. § 3504, the government's denial that there had been electronic surveillance so used, is adequate to answer the charge that the witness' attorneys had been the subject of electronic surveillance. Assuming the witness had standing to raise such a claim, *see Beverly v. United States*, 468 F.2d 732, 751 (5th

of the U. S. Attorney to present the denial in the form of live testimony probably made our task in evaluating the evidence more difficult than if the relevant information had been contained in affidavits. The required showings were made piecemeal during the testimony, and some through responses on cross-examination. Further, the testimony of the government witnesses was, in places, contradictory. While a hearing, with the opportunity for cross-examination by the witness and questioning by the judge, is a profitable procedure for thoroughly exploring the facts, a careful U. S. Attorney should consider the advantages inherent in carefully documenting all the relevant facts in affidavits even when a hearing is held.

■ Maury's remaining defenses to the order to testify were properly denied by the district court. The policies articulated in *Calandra v. United States*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), concerning the smooth functioning of the grand jury severely limit the issues that may be raised in a § 1826 contempt proceeding. A recalcitrant witness, for example, lacks standing to challenge the composition of the grand jury. *United States v. Duncan*, 456 F.2d 1401, 1403 (9th Cir. 1972); *see* 28 U.S.C. § 1867. Similarly, the witness cannot challenge the authority of the grand jury on the theory that its investigation does not concern matters within the subject matter jurisdiction of the federal courts. *Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979, 983 (1919). Therefore, the appellant's contentions on these grounds lack merit.

■ The courts, however, retain general supervisory power over the grand jury to prevent abuse of its process or the invasion of the constitutionally protected rights of the witnesses called before it. *See In re Lopreato*, 511 F.2d 1150 (1st Cir. 1975); *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85 (3d Cir. 1973). Maury claims that

the U. S. Attorney was improperly using the grand jury to prepare a pending indictment for trial and to harass him because of his political beliefs. Calling a grand jury investigation for the "sole or dominating" reason of gathering information to be used in the trial of a pending indictment is an abuse, *In re Doe (Ellsberg)*, 455 F.2d 1270, 1273–74 (1st Cir. 1972); *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir. 1964). Here, however, the U. S. Attorney stated that the inquiry was directed at the theft of the Iremite. The fact that an indictment was pending charging an unrelated person with possession of the Iremite does not constitute a showing that the grand jury was used improperly for discovery purposes. *See In re Doe (Ellsberg), supra.*

■ The legitimacy of the purpose of the grand jury also tends to negate Maury's charge that he was called before the grand jury merely to harass him for his unpopular political beliefs. The First Amendment generally does not offer protection from a duty to testify before the grand jury. *See Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Beverly v. United States*, 468 F.2d 732, 747–49 (5th Cir. 1972). While use of the grand jury for bad faith harassment of a political dissident with no expectation that any testimony concerning the commission of a crime would be forthcoming would constitute an abuse, that is not the situation in this case. The district court did not err in refusing to hold an evidentiary hearing in regard to charges of abuse of the grand jury.

■ Finally, appellant claims that he should not be required to answer questions before the grand jury in the absence of bilingual counsel, or some other bilingual representative. In the alternative, he claims that he is entitled to a transcript shortly after he testifies, in order to see if errors appeared on the record. Because he speaks only Spanish, and the grand jury proceedings are conducted in English, he

Cir. 1972), it is only in relation to surveillance which might have supplied information concerning is expected testimony. *See id.* at 749. As the government adequately denied that any

electronic surveillance had been instituted by the F.B.I., and that the F.B.I. investigation was the sole source of the questions intended to be put to Maury, no further denial was needed.

suggests that a representative in the grand jury room is necessary to protect him from the adverse effects of translation errors.[6] This court is aware of the problems of the Spanish-speaking in the English language federal court in Puerto Rico. *E. g., United States v. DeJesus Boria,* 518 F.2d 368 (1st Cir. 1975). The witness, however, has not made an adequate showing that he would be in a significantly worse position than any other witness before a grand jury. An English speaking witness runs the same risk of inadvertent transcription errors by the court reporter. The additional risk of translation error does not seem to be prejudicial, especially when both the U. S. Attorney and the grand jurors can be assumed to be bilingual.

*The order of the district court is affirmed.*

---

6. The official translator for the District Court of Puerto Rico translates the questions and answers in the grand jury room.