869 F.2d 414
 27 Fed. R. Evid. Serv. 1160
 UNITED STATES of America, Appellee,
v.
Dale Irving MASON, Appellant.
UNITED STATES of America, Appellee,
v.
Dennis John NAPIERALSKI, Appellant.
UNITED STATES of America, Appellee,
v.
John H. BORTON, Appellant.
UNITED STATES of America, Appellee,
v.
Nancy Lee MASON, Appellant.
 Nos. 87-5463, 87-5464, 88-5001 and 88-5002.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 17, 1988.
Decided March 8, 1989.
 
 Marc Kurzman, Minneapolis, Minn., for appellants Napieralski and borton.
 Mark Peterson and Scott Tilsen, Minneapolis, Minn., for appellant Mason.
 John Lee, Minneapolis, Minn., for appellee U.S.
 Before HEANEY,* FAGG and WOLLMAN, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 After a joint jury trial, Dale Mason, Nancy Mason, Dennis Napieralski, and John Borton were convicted of conspiracy to manufacture and distribute marijuana in violation of 21 U.S.C. Sec. 846. Dale Mason and Borton were convicted of distribution of marijuana in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2. Dale Mason, Nancy Mason, and Napieralski were convicted of manufacturing marijuana in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2. Finally, Dale Mason and Nancy Mason were convicted of possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2. All four defendants appeal their convictions. We affirm.
 
 I.
 
 2
 On September 6, 1986, the Itasca County, Minnesota Sheriff's Department received a teletype message from the Indiana State Police stating that an informant had told them that an underground greenhouse was to be built in Itasca County for the purpose of growing marijuana. The informant provided the telephone number of the persons constructing the project and stated that two of the persons involved would be Dale Mason and John Borton.
 
 
 3
 The Sheriff's Department conducted a follow-up investigation and discovered that the telephone number was assigned to a property at which Dale Mason received mail. They learned that Dennis Napieralski had purchased this property in July of 1986 without viewing the interior of the house and had, through Dale Mason, applied for and received a building permit. Additional investigation into Dale Mason's energy consumption and hardware purchases suggested that he had constructed and was operating a greenhouse.
 
 
 4
 The Sheriff's Department obtained a search warrant, which agents of the Sheriff's Department and the Minnesota Bureau of Criminal Apprehension (BCA) executed on March 11, 1987. The agents found Dale Mason at home and discovered in the basement a sophisticated hydroponic marijuana growing facility containing several hundred marijuana plants in various stages of growth.
 
 
 5
 The agents seized several pocket day-timers from the house's living area. The day-timers, compiled by Dale and Nancy Mason on a daily basis, contain numerous entries regarding the construction and operation of the hydroponic project. For example, various entries describe the work done by different individuals on the project, progress that had been made in construction of the facility, the rate of growth of the marijuana plants, the expected costs of completing the project, the expenses incurred, and the formula by which profits would be distributed. The day-timers contain numerous incriminating references to the activities of, among other people, "Dennis Napieralski," "Den Nap," "Dennis," "J.B.," and "John." The day-timers also contain entries unrelated to the marijuana growing facility.
 
 II.
 
 6
 For reversal, the Masons contend that the day-timers are private papers, the contents of which are protected by the fifth amendment. They cite Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 533, 29 L.Ed. 746 (1886), for this proposition. The scope of the Boyd doctrine has been significantly eroded by more recent decisions, however. "If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." United States v. Doe, 465 U.S. 605, 612 n. 10, 104 S.Ct. 1237, 1242 n. 10, 79 L.Ed.2d 552 (1984); Andresen v. Maryland, 427 U.S. 463, 473-77, 96 S.Ct. 2737, 2745-47, 49 L.Ed.2d 627 (1976).
 
 
 7
 The Masons argue that Doe and Andresen involved business records and that the fifth amendment continues to protect the contents of personal papers such as diaries. We need not decide this matter, for "if contents are protected at all, it is only in rare situations, where compelled disclosure would break 'the heart of our sense of privacy.' " Butcher v. Bailey, 753 F.2d 465, 469 (6th Cir.) (quoting Doe, 465 U.S. at 619 n. 2, 104 S.Ct. at 1245 n. 2 (Marshall, J., concurring in part)), cert. dismissed, 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985); see also In re Steinberg, 837 F.2d 527 (1st Cir.1988), for a careful analysis of the Supreme Court's most recent pronouncements on the Boyd doctrine.
 
 
 8
 The district court[1] adopted and affirmed the following finding by the magistrate:[2] "The documents seized in the residence were 'pocket day-timers,' calendars generally used to note appointments and reminders * * *. The government asserts the notations relate to the cultivation of marijuana. Certainly from the court's examination of the materials they are not personal diaries * * *." Magistrate's Report and Recommendation of June 12, 1987, at 10. We cannot say that this finding is clearly erroneous. See Steinberg, 837 F.2d at 530; Butcher, 753 F.2d at 469. We therefore reject the Masons' argument that admission of the day-timers violated their rights under the fifth amendment.
 
 III.
 
 9
 Borton and Napieralski also challenge admission of the day-timers. They argue that the district court erred by failing to make an explicit determination for the record regarding the admissibility of the day-timers under the co-conspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E). See United States v. Bell, 573 F.2d 1040, 1044 (8th Cir.1978). They also contend that the statements in the day-timers did not further the conspiracy, as required by Rule 801(d)(2)(E).
 
 
 10
 We will not reverse for failure to follow the procedures established in Bell absent a showing of prejudice. See United States v. Cerone, 830 F.2d 938, 952 (8th Cir.1987), cert. denied sub nom., Aiuppa v. United States, --- U.S. ----, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988). Because Borton and Napieralski fail to allege any prejudice from the court's failure to follow the Bell procedures, we must reject their argument. We also are unpersuaded by their contention that the statements in the day-timers were not made in furtherance of the conspiracy. See United States v. DeLuna, 763 F.2d 897, 909 (8th Cir.) (cryptic notes referring to meetings, telephone conversations, and disbursements of funds furthered conspiracy), cert. denied, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985); United States v. Lewis, 759 F.2d 1316, 1339 (8th Cir.) ("[a]ccounting records are essential even for a criminal enterprise's continued vitality"), cert. denied, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). We therefore conclude that this evidence was properly admitted.
 
 IV.
 
 11
 After receiving the teletype from the Indiana State Police, the Itasca County Sheriff's Department asked the Indiana authorities to run the name "John Borton" through their computer. The Indiana authorities reported that the only "John Borton" in their record system was "John H. Borton." Subsequent investigation did not link "John H. Borton" to the hydroponic operation. Defendant Borton's middle initial is "R." Because the original indictment inadvertently listed it as "H," the government, at the close of evidence, sought and received permission to delete the middle initial. Borton contends that this ruling constituted reversible error.
 
 
 12
 Although the general rule is that a court may not amend an indictment, that rule is inapplicable when the change is one of form only. United States v. Sazenski, 833 F.2d 741, 743-44 (8th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 1079, 1083, 99 L.Ed.2d 238 (1988). Misnomers generally are mistakes of form that may be corrected by amending the indictment. See e.g., United States v. Young Bros., Inc., 728 F.2d 682, 693 (5th Cir.), cert. denied, 469 U.S. 881, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984); United States v. Kegler, 724 F.2d 190, 194 (D.C.Cir.1983); United States v. Janoe, 720 F.2d 1156, 1160 (10th Cir.1983), cert. denied, 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984). "Furthermore, a finding of prejudice to the defendant must be present before an amendment is held impermissible." United States v. Burnett, 582 F.2d 436, 438 (8th Cir.1976); see also United States v. Krall, 835 F.2d 711, 715 (8th Cir.1987).
 
 
 13
 The amendment in this case was one of form only. Borton does not argue that he was not the individual indicted by the grand jury, and the amendment in no way changed the substance of the indictment. Moreover, we are unable to perceive how Borton could have been prejudiced by the amendment. He argues that his primary defense was mistaken identity--that "J.B." and "John" in the day-timers referred to another John Borton--and that the amendment at the close of evidence stripped him of that defense. The amendment, however, in no way affected the state of the evidence or limited Borton's ability to argue mistaken identity to the jury. In fact, Borton's counsel developed this argument in considerable detail in his closing argument. Accordingly, we find no error in the district court's ruling allowing the amendment.
 
 V.
 
 14
 We have reviewed appellants' additional arguments and find them to be without merit. Accordingly, we affirm the convictions.
 
 
 
 *
 The Honorable Gerald W. Heaney was an active judge of the Eighth Circuit on the date this case was submitted, but took senior status on January 1, 1989, before the decision was filed
 
 
 [1]
 The Honorable Robert G. Renner, United States District Judge for the District of Minnesota
 
 
 [2]
 The Honorable J. Earl Cudd, United States Magistrate for the District of Minnesota