March 23, 1993 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1203

IN RE: GRAND JURY PROCEEDINGS,

UNITED STATES OF AMERICA,

Petitioner, Appellee,

v.

JOHN DOE,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Torruella, Cyr and Boudin,
Circuit Judges.

Joseph James Balliro, Jr. and Balliro, Mondano &

Balliro, P.C. on brief for appellant.

A. John Pappalardo, United States Attorney, and Fred M.

Wyshak, Jr., Assistant U.S. Attorney, on brief for appellee.

Per Curiam. This is an appeal of the district

court's judgment of contempt. We affirm.

I. Background

On November 6, 1992, a subpoena to testify and to

produce certain documents before a grand jury was issued to

"John Doe, Jr." ("Doe").1 The subpoena apparently related

to the restaurant and lounge where Doe worked and which was

owned by Doe's parents. Doe's attorney, Richard Egbert,

informed Assistant United States Attorney Fred Wyshak that

Doe was not an authorized officer of the restaurant and

lounge. Nevertheless, Egbert agreed to provide the documents

sought, but he told Wyshak in a letter that Doe would refuse

to answer any questions before the grand jury, relying on his

Fifth Amendment right not to incriminate himself.

Pursuant to 18 U.S.C. 6001 et seq., Wyshak then

sought Justice Department authorization to apply to the

district court for an immunity order compelling Doe to

testify. Wyshak's application named "John Doe" (not "John

Doe, Jr.") as the witness for whom immunity was sought and

provided Doe's birthdate and social security number as

identifying information. The Deputy Assistant Attorney

General of the Criminal Division of the Justice Department

approved Wyshak's request. On January 15, 1993, the district

1. The subpoena was issued in the appellant's name. We
follow the government's lead, however, and refer to the
appellant in this opinion by the pseudonym Doe.

-2-

court issued its order directing "John Doe" (not "John Doe,

Jr.") to testify before the grand jury under a grant of

immunity. Thereafter, a second subpoena ordering "John Doe"

to appear on January 28 and the court's immunity order were

delivered in hand to Doe. The day before Doe was to

testify, his attorney moved the court to continue Doe's grand

jury appearance. As grounds for the motion, Egbert stated

that a conflict in his continued representation of Doe had

arisen, requiring Doe to find new counsel, and that Doe would

be out of the state on vacation on the date he was ordered to

appear. Egbert did not object to the fact that the

designation "Jr." was not used after Doe's name in the court

order or in the January subpoena. (Indeed, his motion to

continue Doe's grand jury appearance began "Now comes John

Doe, and respectfully requests [a continuance of] the Grand

Jury appearance of Mr. Doe . . . ." (our emphasis)) After a

hearing, the district court continued Doe's appearance until

late February. Doe subsequently informed the agent who had

served him with the subpoena and court order that he would be

consulting with Egbert and would appear as scheduled before

the grand jury.

On February 25, 1993, Doe appeared before the

district court, accompanied by new counsel, Joseph Balliro,

Jr. He claimed that his name was "John Doe, Jr." and that

the "John Doe" named in the court order was his father. The

-3-

court held a hearing, during which Balliro conceded that the

social security number and date of birth in the application

were those of Doe and not his father. The court found that

the John Doe, who was then present before the court, and who

had been identified by social security number and date of

birth in Wyshak's application for immunity, was the person

whom the court had ordered to testify under a grant of

immunity. The court also pointed out that the same John Doe

had been the one who had invoked Fifth Amendment rights, and

who had sought to continue his appearance without challenging

either the January subpoena or the court's immunity order.

Consequently, the court found that the immunity order applied

to Doe. At the end of the hearing, it specifically assured

Doe that "you have been granted immunity" and also told

Balliro that "anything he says cannot be used against him nor

can it lead to any evidence that could be used against him."

Doe then appeared before the grand jury and refused

to testify. The government petitioned for a judgment of

contempt, which the court granted. During the contempt

hearing, Balliro agreed that "there [was no] question" that

Doe was the man who was supposed to testify, but stated that

"I'm here to suggest to you that the technical requirements

of the [immunity statute] have not been complied with, that's

all." After the court assured Doe once more that he had been

-4-

immunized and could not be prosecuted because of his grand

jury testimony, Doe again declined to testify. The court

then found Doe to be in contempt of the court's order, and

denied his request for bail and/or a stay of the contempt

order pending appeal. The next day Doe moved the court to

stay its contempt order pending decision on his accompanying

motion for disclosure of information regarding the selection

of the grand jury, asserting that the order to testify and

the contempt judgment would be invalid if the grand jury had

not been "duly" empanelled. The court denied the stay

motion.

Doe appealed the district court's judgment of

contempt and moved in this court for bail pending appeal. We

denied the motion for bail pending appeal. We now affirm the

judgment of contempt.

II. Discussion

A. Alleged Misnaming of Doe in the Immunity Order

Doe argues that the requirements of 18 U.S.C.

6001 et seq. were violated technically when the court ordered

"John Doe" and not "John Doe, Jr." to testify before the

grand jury, and that strict compliance with the immunity

statute is required since Doe's refusal to testify led to his

incarceration. He further suggests that the court could not

"amend" its immunity order to clarify that Doe and not his

father had been ordered to testify since the decision to

-5-

grant or withhold immunity is the exclusive prerogative of

the executive branch. Finally, he states that he had no

obligation to inform the government that it had immunized the

wrong person and that he therefore could not have waived any

argument by not doing so.2 Doe's arguments are without

merit.

As counsel for Doe conceded, there is no question

that John Doe, Jr. and not his father is the witness who was

subpoenaed to testify before the grand jury and who refused

to do so on the basis of his privilege against self-

incrimination. The first subpoena issued in November 1992

was addressed to "John Doe, Jr." In response to that

subpoena, Doe's attorney notified AUSA Wyshak by letter that

"John Doe, Jr. . . . would refuse to answer any questions

[before the grand jury] relying on his Fifth Amendment

privilege." Doe's refusal to testify prompted Wyshak's

application for authorization to seek a court order

compelling Doe's testimony.

Obviously, the government has some obligation to

correctly identify the witness subject to an immunity order.

The underlying justification for requiring a witness to give

up his constitutional privilege against self-incrimination

and compelling him to testify under a grant of immunity is

2. In view of our disposition of Doe's misnomer argument, we
do not address his waiver argument.

-6-

that the grant of immunity will protect that witness from

prosecution based on his compelled testimony except, of

course, for perjury. Kastigar v. United States, 406 U.S.

441, 449, 453 (1972). Therefore, we assume that a witness,

based on his constitutional privilege not to have to

incriminate himself, may require the government to show that,

if he is compelled to testify under a court order, he is the

one who will receive the protection of the immunity granted

by the order.

If we had any concern that Doe could be prosecuted

on the basis of his compelled testimony (except for perjury)

because the grant of immunity at issue here did not clearly

apply to him, we would likely vacate the contempt judgment.

But, on this record, we have no such doubt. Clearly, Doe was

the person who had been immunized, and all parties agreed

that he was the person immunized. The application submitted

to the Department of Justice sought immunity for the "John

Doe" who had Doe's (and not his father's) birthdate and

social security number. At the hearing, the court confirmed

that it had intended to issue its order to that John Doe, who

had been the only Doe active in this matter since the first

subpoena had issued in November, and the court specifically

told Doe and his counsel that Doe was the one immunized by

the order. Furthermore, the government willingly concedes

-7-

that Doe is covered by the grant of immunity at issue in this

case.

Since the record plainly shows that the immunity

order pertained to Doe and not to his father, the failure of

the immunity application and the court's order to include the

designation "Jr." after Doe's name is of no significance.

That this is so is also shown readily by reference to cases

amending indictments which misstated the defendants' names.

See, e.g., Faust v. United States, 163 U.S. 452, 452 (1896)

(indictment naming "W.J. Foust" instead of "W.J. Faust" was

not material variance); United States v. Mason, 869 F.2d 414,

417 (8th Cir.) (district court properly amended indictment of

"John H. Borton" to read "John R. Borton" where the defendant

acknowledged that the grand jury had intended to indict him,

the amendment did not change the substance of the indictment,

and defendant had not been prejudiced by the amendment),

cert. denied, 492 U.S. 907 (1989); United States v. Young

Brothers, Inc., 728 F.2d 682, 693 (5th Cir.) (the court

properly amended a misnomer in an indictment where the

defendant's rights were not affected and the defendant had

been adequately apprised of the charges, preventing surprise

at trial or subsequent prosecution for the same offense),

cert. denied, 469 U.S. 881 (1984); cf. United States v.

Alessi, 638 F.2d 466, 477-79 (2d Cir. 1980) (the government

had shown that defendant "Gaetano Carcone" was the "Thomas

-8-

Carcone" indicted by showing that the grand jury had intended

to indict the person who had the defendant's phone number and

address).

We do not agree that the court's confirmation that

John Doe, Jr. was the John Doe in its order usurped the

United States Attorney's right to determine that Doe should

be immunized. The record makes clear that the process

whereby Doe received immunity was initiated by the United

States Attorney pursuant to his determination that Doe's

testimony was necessary and that Doe should be immunized.

Moreover, we have no doubt that the court could clarify any

ambiguity in its own order. A court need not issue a written

immunity order under the statute, but may issue an oral

order. See United States v. Lach, 874 F.2d 1543, 1547 (11th

Cir. 1989); United States v. Leyva, 513 F.2d 774, 776 (5th

Cir. 1975). If the court may grant an oral immunity order,

then certainly it has full authority to clarify orally any

alleged ambiguity in a written order it has issued under the

statute.3 Finally, we think it apparent from the birth

date and social security number that the Department of

Justice intended to approve immunity for Doe, rather than his

father, and we reject the suggestion that the district court

3. In view of our disposition of this point, we see no need
to determine whether the court "amended" its written order
during the hearing as Doe claims, or whether it issued a
separate oral order which rendered "any alleged defect in the
written order . . . a nullity" as the government suggests.

-9-

in any way infringed on the authority of the Department to

decide who should be immunized.

B. Selection of the Grand Jury

Doe's argument that he is entitled to challenge the

composition of the grand jury and thus entitled to disclosure

of such information is also meritless. Doe asserts that the

court's failure to permit him to discover information about

the composition of the grand jury violated his statutory

rights under the Jury Selection and Service Act ("Jury

Selection Act"), 28 U.S.C. 1861 et seq., and under the

Constitution.

Doe appears to find support for his statutory

argument in Test v. United States, 420 U.S. 28 (1975) (per

curiam), in which the Supreme Court held that a convicted

defendant had the right to inspect jury lists pertaining to

the grand jury which indicted him and to a pending petit jury

in his case. The Court found that section 1867(f) of the

Jury Selection Act gives a "litigant" an unqualified right to

inspect jury lists. In a footnote, which Doe seizes upon,

the Supreme Court essentially defined the term "litigant" to

mean "the United States and the defendant in a criminal case,

and . . . any party in a civil case."

The Court's language, taken out of context, might

suggest that a civil contemnor like Doe is a "party in a

civil case" who would have a right to challenge grand jury

-10-

selection procedures. (We assume that it is obvious that Doe

is not a "defendant in a criminal case.") Even a cursory

reading of the statute, however, shows that such an

interpretation would be wrong. The provision in question

permits parties in civil cases in which a petit jury is

empanelled to challenge jury selection procedures, see 28

U.S.C. 1867(c), and so does not apply to persons held in

civil contempt by a court or witnesses testifying before a

grand jury.

Indeed, Doe's argument that he may challenge the

composition or selection of the grand jury has no support at

all in case law. As far as we have been able to determine,

all courts which have considered this question, including

this court, have held that a recalcitrant witness has no

standing to challenge the composition or selection of the

grand jury, whether under the Jury Selection Act or under the

Constitution. See In re Maury Santiago, 533 F.2d 727, 730

(1st Cir. 1976) (a recalcitrant witness has no standing to

challenge the composition of a grand jury); United States v.

Duncan, 456 F.2d 1401, 1403 (9th Cir.) (a recalcitrant

witness did not have standing under the Jury Selection Act to

challenge grand jury selection procedures because she was not

a "defendant" and had not been indicted by the grand jury),

vacated on other grounds, 409 U.S. 814 (1972); United States

v. Caron, 551 F. Supp. 662, 665 (E.D. Va. 1982) (neither the

-11-

language nor the purpose of the Jury Selection Act supports a

witness's right to challenge the grand jury's composition,

nor did a recalcitrant witness have standing under the

Constitution to raise irregularities in the empanelling of

the grand jury), aff'd, 722 F.2d 739 (4th Cir. 1983), cert.

denied, 465 U.S. 1103 (1984); cf. Matter of Special February

1975 Grand Jury, 565 F.2d 407, 412 (7th Cir. 1977) (although

an indicted defendant would clearly have standing to

challenge the composition of the grand jury, the court

doubted that witnesses subpoenaed to testify before a grand

jury had standing to challenge the composition of the jury on

equal protection grounds) (dictum). We have found no

contrary authority on point.4 Because Doe had no right to

challenge the grand jury's empanellment, he had no right to

obtain discovery about grand jury selection procedures under

the Jury Selection Act. See Matter of Archuleta, 432 F.

4. In United States ex rel. Chestnut v. Criminal Court of

New York, 442 F.2d 611, 615 n.7 (2d Cir.), cert. denied, 404

U.S. 856 (1971), the court concluded that defendants who had
been convicted of criminal contempt for refusing to answer
questions before a state grand jury under a grant of immunity
could challenge the selection of the grand jury where it was
the grand jury who had ordered the filing of an information
charging criminal contempt. The Second Circuit itself has
indicated that that case would be a "weak reed" to rely upon
for any witness held in civil contempt who tries to challenge
a grand jury array under the Jury Selection Act. See Matter

of Archuleta, 561 F.2d 1059, 1063 n.7 (2d Cir. 1977); see

also Matter of Archuleta, 432 F. Supp. 583, 590-93 (S.D.N.Y.

1977) (stating, after extensive discussion of more recent
case law, that "we have substantial doubt whether Chestnut, .

. . is still controlling").

-12-

Supp. 583, 587, 600 (S.D.N.Y. 1977) (denying grand jury

witness's motion for discovery of materials regarding grand

jury selection procedures after concluding that a subpoenaed

witness had no standing to challenge the selection of the

grand jury on a motion to quash the subpoena).

Doe further alleges that imprisoning him for civil

contempt "without affording him the opportunity to review the

Grand Jury is a violation of his rights to Due Process of

Law, as well as, the Fourth, Fifth, Sixth, and Eighth

Amendments to the Constitution of the United States." But

Doe makes no attempt to support his allegation with case law,

nor does he explain precisely how his constitutional rights

under the specific amendments he names have been violated.

The tone of his brief is purely hortatory -- without legal

support or any argument, he urges the court to give Doe the

same right as criminal defendants to question whether the

grand jury was duly empanelled simply because, like a

convicted criminal defendant, he has been incarcerated.

Arguments not seriously developed on appeal are, as is well

settled in this circuit, deemed waived. See United States v.

Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S.

1082 (1990).

III. Conclusion

The reasons Doe has advanced to support his refusal

to testify are without merit. Accordingly, he has not met

-13-

his burden respecting the existence of just cause for

refusing to testify and the district court did not abuse its

discretion in ordering him held in civil contempt. See 28

U.S.C. 1826(a) (the court may summarily order the

confinement of a witness who refuses "without just cause" to

testify pursuant to court order); In re Grand Jury

Proceedings, 943 F.2d 132, 136 (1st Cir. 1991) (we review a

contempt finding for abuse of discretion).

The judgment of contempt is affirmed.

-14-