USCA1 Opinion

 

 March 23, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1203 IN RE: GRAND JURY PROCEEDINGS, _______________________ UNITED STATES OF AMERICA, Petitioner, Appellee, v. JOHN DOE, Respondent, Appellant. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ___________________ Before Torruella, Cyr and Boudin, Circuit Judges. ______________ ___________________ Joseph James Balliro, Jr. and Balliro, Mondano & ____________________________ ____________________ Balliro, P.C. on brief for appellant. _____________ A. John Pappalardo, United States Attorney, and Fred M. ___________________ ________ Wyshak, Jr., Assistant U.S. Attorney, on brief for appellee. ___________ __________________ __________________ Per Curiam. This is an appeal of the district ___________ court's judgment of contempt. We affirm. I. Background __________ On November 6, 1992, a subpoena to testify and to produce certain documents before a grand jury was issued to "John Doe, Jr." ("Doe").1 The subpoena apparently related to the restaurant and lounge where Doe worked and which was owned by Doe's parents. Doe's attorney, Richard Egbert, informed Assistant United States Attorney Fred Wyshak that Doe was not an authorized officer of the restaurant and lounge. Nevertheless, Egbert agreed to provide the documents sought, but he told Wyshak in a letter that Doe would refuse to answer any questions before the grand jury, relying on his Fifth Amendment right not to incriminate himself. Pursuant to 18 U.S.C. 6001 et seq., Wyshak then sought Justice Department authorization to apply to the district court for an immunity order compelling Doe to testify. Wyshak's application named "John Doe" (not "John Doe, Jr.") as the witness for whom immunity was sought and provided Doe's birthdate and social security number as identifying information. The Deputy Assistant Attorney General of the Criminal Division of the Justice Department approved Wyshak's request. On January 15, 1993, the district ____________________ 1. The subpoena was issued in the appellant's name. We follow the government's lead, however, and refer to the appellant in this opinion by the pseudonym Doe. -2- court issued its order directing "John Doe" (not "John Doe, Jr.") to testify before the grand jury under a grant of immunity. Thereafter, a second subpoena ordering "John Doe" to appear on January 28 and the court's immunity order were delivered in hand to Doe. The day before Doe was to testify, his attorney moved the court to continue Doe's grand jury appearance. As grounds for the motion, Egbert stated that a conflict in his continued representation of Doe had arisen, requiring Doe to find new counsel, and that Doe would be out of the state on vacation on the date he was ordered to appear. Egbert did not object to the fact that the designation "Jr." was not used after Doe's name in the court order or in the January subpoena. (Indeed, his motion to continue Doe's grand jury appearance began "Now comes John ____ Doe, and respectfully requests [a continuance of] the Grand ___ Jury appearance of Mr. Doe . . . ." (our emphasis)) After a hearing, the district court continued Doe's appearance until late February. Doe subsequently informed the agent who had served him with the subpoena and court order that he would be consulting with Egbert and would appear as scheduled before the grand jury. On February 25, 1993, Doe appeared before the district court, accompanied by new counsel, Joseph Balliro, Jr. He claimed that his name was "John Doe, Jr." and that the "John Doe" named in the court order was his father. The -3- court held a hearing, during which Balliro conceded that the social security number and date of birth in the application were those of Doe and not his father. The court found that the John Doe, who was then present before the court, and who had been identified by social security number and date of birth in Wyshak's application for immunity, was the person whom the court had ordered to testify under a grant of immunity. The court also pointed out that the same John Doe had been the one who had invoked Fifth Amendment rights, and who had sought to continue his appearance without challenging either the January subpoena or the court's immunity order. Consequently, the court found that the immunity order applied to Doe. At the end of the hearing, it specifically assured Doe that "you have been granted immunity" and also told Balliro that "anything he says cannot be used against him nor can it lead to any evidence that could be used against him." Doe then appeared before the grand jury and refused to testify. The government petitioned for a judgment of contempt, which the court granted. During the contempt hearing, Balliro agreed that "there [was no] question" that Doe was the man who was supposed to testify, but stated that "I'm here to suggest to you that the technical requirements of the [immunity statute] have not been complied with, that's all." After the court assured Doe once more that he had been -4- immunized and could not be prosecuted because of his grand jury testimony, Doe again declined to testify. The court then found Doe to be in contempt of the court's order, and denied his request for bail and/or a stay of the contempt order pending appeal. The next day Doe moved the court to stay its contempt order pending decision on his accompanying motion for disclosure of information regarding the selection of the grand jury, asserting that the order to testify and the contempt judgment would be invalid if the grand jury had not been "duly" empanelled. The court denied the stay motion. Doe appealed the district court's judgment of contempt and moved in this court for bail pending appeal. We denied the motion for bail pending appeal. We now affirm the judgment of contempt. II. Discussion __________ A. Alleged Misnaming of Doe in the Immunity Order ______________________________________________ Doe argues that the requirements of 18 U.S.C. 6001 et seq. were violated technically when the court ordered "John Doe" and not "John Doe, Jr." to testify before the grand jury, and that strict compliance with the immunity statute is required since Doe's refusal to testify led to his incarceration. He further suggests that the court could not "amend" its immunity order to clarify that Doe and not his father had been ordered to testify since the decision to -5- grant or withhold immunity is the exclusive prerogative of the executive branch. Finally, he states that he had no obligation to inform the government that it had immunized the wrong person and that he therefore could not have waived any argument by not doing so.2 Doe's arguments are without merit. As counsel for Doe conceded, there is no question that John Doe, Jr. and not his father is the witness who was subpoenaed to testify before the grand jury and who refused to do so on the basis of his privilege against self- incrimination. The first subpoena issued in November 1992 was addressed to "John Doe, Jr." In response to that subpoena, Doe's attorney notified AUSA Wyshak by letter that "John Doe, Jr. . . . would refuse to answer any questions [before the grand jury] relying on his Fifth Amendment privilege." Doe's refusal to testify prompted Wyshak's application for authorization to seek a court order compelling Doe's testimony. Obviously, the government has some obligation to correctly identify the witness subject to an immunity order. The underlying justification for requiring a witness to give up his constitutional privilege against self-incrimination and compelling him to testify under a grant of immunity is ____________________ 2. In view of our disposition of Doe's misnomer argument, we do not address his waiver argument. -6- that the grant of immunity will protect that witness from prosecution based on his compelled testimony except, of course, for perjury. Kastigar v. United States, 406 U.S. ________ _____________ 441, 449, 453 (1972). Therefore, we assume that a witness, based on his constitutional privilege not to have to incriminate himself, may require the government to show that, if he is compelled to testify under a court order, he is the one who will receive the protection of the immunity granted by the order. If we had any concern that Doe could be prosecuted on the basis of his compelled testimony (except for perjury) because the grant of immunity at issue here did not clearly apply to him, we would likely vacate the contempt judgment. But, on this record, we have no such doubt. Clearly, Doe was the person who had been immunized, and all parties agreed that he was the person immunized. The application submitted to the Department of Justice sought immunity for the "John Doe" who had Doe's (and not his father's) birthdate and social security number. At the hearing, the court confirmed that it had intended to issue its order to that John Doe, who had been the only Doe active in this matter since the first subpoena had issued in November, and the court specifically told Doe and his counsel that Doe was the one immunized by the order. Furthermore, the government willingly concedes -7- that Doe is covered by the grant of immunity at issue in this case. Since the record plainly shows that the immunity order pertained to Doe and not to his father, the failure of the immunity application and the court's order to include the designation "Jr." after Doe's name is of no significance. That this is so is also shown readily by reference to cases amending indictments which misstated the defendants' names. ___________ See, e.g., Faust v. United States, 163 U.S. 452, 452 (1896) ________________ _____________ (indictment naming "W.J. Foust" instead of "W.J. Faust" was not material variance); United States v. Mason, 869 F.2d 414, _____________ _____ 417 (8th Cir.) (district court properly amended indictment of "John H. Borton" to read "John R. Borton" where the defendant acknowledged that the grand jury had intended to indict him, the amendment did not change the substance of the indictment, and defendant had not been prejudiced by the amendment), cert. denied, 492 U.S. 907 (1989); United States v. Young _____________ _____________ _____ Brothers, Inc., 728 F.2d 682, 693 (5th Cir.) (the court _______________ properly amended a misnomer in an indictment where the defendant's rights were not affected and the defendant had been adequately apprised of the charges, preventing surprise at trial or subsequent prosecution for the same offense), cert. denied, 469 U.S. 881 (1984); cf. United States v. _____________ __________________ Alessi, 638 F.2d 466, 477-79 (2d Cir. 1980) (the government ______ had shown that defendant "Gaetano Carcone" was the "Thomas -8- Carcone" indicted by showing that the grand jury had intended to indict the person who had the defendant's phone number and address). We do not agree that the court's confirmation that John Doe, Jr. was the John Doe in its order usurped the United States Attorney's right to determine that Doe should be immunized. The record makes clear that the process whereby Doe received immunity was initiated by the United States Attorney pursuant to his determination that Doe's testimony was necessary and that Doe should be immunized. Moreover, we have no doubt that the court could clarify any ambiguity in its own order. A court need not issue a written immunity order under the statute, but may issue an oral order. See United States v. Lach, 874 F.2d 1543, 1547 (11th _________________ ____ Cir. 1989); United States v. Leyva, 513 F.2d 774, 776 (5th _____________ _____ Cir. 1975). If the court may grant an oral immunity order, then certainly it has full authority to clarify orally any alleged ambiguity in a written order it has issued under the statute.3 Finally, we think it apparent from the birth date and social security number that the Department of Justice intended to approve immunity for Doe, rather than his father, and we reject the suggestion that the district court ____________________ 3. In view of our disposition of this point, we see no need to determine whether the court "amended" its written order during the hearing as Doe claims, or whether it issued a separate oral order which rendered "any alleged defect in the written order . . . a nullity" as the government suggests. -9- in any way infringed on the authority of the Department to decide who should be immunized. B. Selection of the Grand Jury ___________________________ Doe's argument that he is entitled to challenge the composition of the grand jury and thus entitled to disclosure of such information is also meritless. Doe asserts that the court's failure to permit him to discover information about the composition of the grand jury violated his statutory rights under the Jury Selection and Service Act ("Jury Selection Act"), 28 U.S.C. 1861 et seq., and under the Constitution. Doe appears to find support for his statutory argument in Test v. United States, 420 U.S. 28 (1975) (per ____ ______________ curiam), in which the Supreme Court held that a convicted defendant had the right to inspect jury lists pertaining to the grand jury which indicted him and to a pending petit jury in his case. The Court found that section 1867(f) of the Jury Selection Act gives a "litigant" an unqualified right to inspect jury lists. In a footnote, which Doe seizes upon, the Supreme Court essentially defined the term "litigant" to mean "the United States and the defendant in a criminal case, and . . . any party in a civil case." The Court's language, taken out of context, might suggest that a civil contemnor like Doe is a "party in a civil case" who would have a right to challenge grand jury -10- selection procedures. (We assume that it is obvious that Doe is not a "defendant in a criminal case.") Even a cursory reading of the statute, however, shows that such an interpretation would be wrong. The provision in question permits parties in civil cases in which a petit jury is ___________________________ empanelled to challenge jury selection procedures, see 28 __________ ___ U.S.C. 1867(c), and so does not apply to persons held in civil contempt by a court or witnesses testifying before a grand jury. Indeed, Doe's argument that he may challenge the composition or selection of the grand jury has no support at all in case law. As far as we have been able to determine, all courts which have considered this question, including this court, have held that a recalcitrant witness has no standing to challenge the composition or selection of the grand jury, whether under the Jury Selection Act or under the Constitution. See In re Maury Santiago, 533 F.2d 727, 730 ___ _____________________ (1st Cir. 1976) (a recalcitrant witness has no standing to challenge the composition of a grand jury); United States v. _____________ Duncan, 456 F.2d 1401, 1403 (9th Cir.) (a recalcitrant ______ witness did not have standing under the Jury Selection Act to challenge grand jury selection procedures because she was not a "defendant" and had not been indicted by the grand jury), vacated on other grounds, 409 U.S. 814 (1972); United States ________________________ _____________ v. Caron, 551 F. Supp. 662, 665 (E.D. Va. 1982) (neither the _____ -11- language nor the purpose of the Jury Selection Act supports a witness's right to challenge the grand jury's composition, nor did a recalcitrant witness have standing under the Constitution to raise irregularities in the empanelling of the grand jury), aff'd, 722 F.2d 739 (4th Cir. 1983), cert. _____ _____ denied, 465 U.S. 1103 (1984); cf. Matter of Special February ______ _______________________________ 1975 Grand Jury, 565 F.2d 407, 412 (7th Cir. 1977) (although ________________ an indicted defendant would clearly have standing to challenge the composition of the grand jury, the court doubted that witnesses subpoenaed to testify before a grand jury had standing to challenge the composition of the jury on equal protection grounds) (dictum). We have found no contrary authority on point.4 Because Doe had no right to challenge the grand jury's empanellment, he had no right to obtain discovery about grand jury selection procedures under the Jury Selection Act. See Matter of Archuleta, 432 F. ________________________ ____________________ 4. In United States ex rel. Chestnut v. Criminal Court of _______________________________ __________________ New York, 442 F.2d 611, 615 n.7 (2d Cir.), cert. denied, 404 ________ ____________ U.S. 856 (1971), the court concluded that defendants who had been convicted of criminal contempt for refusing to answer questions before a state grand jury under a grant of immunity could challenge the selection of the grand jury where it was the grand jury who had ordered the filing of an information charging criminal contempt. The Second Circuit itself has indicated that that case would be a "weak reed" to rely upon for any witness held in civil contempt who tries to challenge a grand jury array under the Jury Selection Act. See Matter __________ of Archuleta, 561 F.2d 1059, 1063 n.7 (2d Cir. 1977); see ____________ ___ also Matter of Archuleta, 432 F. Supp. 583, 590-93 (S.D.N.Y. ________________________ 1977) (stating, after extensive discussion of more recent case law, that "we have substantial doubt whether Chestnut, . ________ . . is still controlling"). -12- Supp. 583, 587, 600 (S.D.N.Y. 1977) (denying grand jury witness's motion for discovery of materials regarding grand jury selection procedures after concluding that a subpoenaed witness had no standing to challenge the selection of the grand jury on a motion to quash the subpoena). Doe further alleges that imprisoning him for civil contempt "without affording him the opportunity to review the Grand Jury is a violation of his rights to Due Process of Law, as well as, the Fourth, Fifth, Sixth, and Eighth Amendments to the Constitution of the United States." But Doe makes no attempt to support his allegation with case law, nor does he explain precisely how his constitutional rights under the specific amendments he names have been violated. The tone of his brief is purely hortatory -- without legal support or any argument, he urges the court to give Doe the same right as criminal defendants to question whether the grand jury was duly empanelled simply because, like a convicted criminal defendant, he has been incarcerated. Arguments not seriously developed on appeal are, as is well settled in this circuit, deemed waived. See United States v. ___ _____________ Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. _______ _____________ 1082 (1990). III. Conclusion __________ The reasons Doe has advanced to support his refusal to testify are without merit. Accordingly, he has not met -13- his burden respecting the existence of just cause for refusing to testify and the district court did not abuse its discretion in ordering him held in civil contempt. See 28 ___ U.S.C. 1826(a) (the court may summarily order the confinement of a witness who refuses "without just cause" to testify pursuant to court order); In re Grand Jury ____________________ Proceedings, 943 F.2d 132, 136 (1st Cir. 1991) (we review a ___________ contempt finding for abuse of discretion). The judgment of contempt is affirmed. _________ -14-